IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| POLYONE CORPORATION, | ) | CASE NO. 1:13 CV 2717 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JOSEPH KUTKA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **REPORT & RECOMMENDATION** |

# Introduction

Before me by referral[1] in this diversity action by PolyOne Corporation against its former employee, Joseph Kutka, and others (the PolyMax defendants), is PolyOne's motion for a preliminary injunction.[2] In the underlying matter, PolyOne raises various claims arising from Kutka's business relationship with the PolyMax defendants and here seeks to enjoin Kutka from continuing that relationship, as well as other relief.[3] Kutka, in his answer, opposes the request for a preliminary injunction.[4] The parties have participated in oral arguments on the motion.[5] Following that argument, PolyOne and Kutka have submitted

---

[1] ECF # 48.

[2] ECF # 21. PolyOne has filed a supplement to the motion (ECF # 87), to which Kutka has responded (ECF # 88).

[3] ECF # 30 (First Amended Complaint).

[4] ECF # 40.

[5] ECF #s 71, 86.

proposed findings of fact and conclusions of law.[6] Moreover, as concerns PolyOne's proposed findings, the PolyMax defendants have filed an objection[7] that PolyOne has moved to strike or, in the alternative, to file a response.[8] In addition, PolyOne and Kutka have submitted joint stipulations of fact.[9]

For the reasons that follow, I will recommend that PolyOne's motion for a preliminary injunction be granted as modified below.

## Facts

The facts essential to adjudicating the motion for a preliminary injunction are briefly stated and mostly not in dispute.

On November 18, 2013, Kutka left PolyOne and accepted employment at PolyMax USA.[10] The position at PolyMax USA that he took then and still holds is Vice President of Operations.[11] Immediately prior to joining PolyMax USA, Kutka was employed as a business

---

[6] ECF # 77 (Kutka proposed findings); ECF #s 78, 79 (PolyOne proposed findings).

[7] ECF # 80.

[8] ECF # 81. That motion was opposed by PolyMax, (ECF # 83), and PolyOne filed a reply (ECF # 84).

[9] ECF # 52.

[10] ECF # 30 at 19 ¶ 70.

[11] *See*, ECF # 78 at ¶¶ 129-32.

manager for healthcare at PolyOne Geon[12] under the terms of an employment agreement signed by Kutka and PolyOne in 2011.[13]

That employment agreement contains restrictions on competition with PolyOne after Kutka's employment with PolyOne came to an end. The agreement states at paragraph 5 that Kutka was prohibited from competing with PolyOne after concluding his employment there as set forth in an attachment to the employment agreement, which attachment provides different restrictions, such as geographic and temporal, based on the different kinds of jobs the employee may have held at PolyOne at the time he left.[14] The agreement further states at paragraph 6 that Kutka was also prohibited for one year from "directly or indirectly" interfering with PolyOne's business by "hiring, raiding or soliciting" PolyOne's employees, consultants, agents, representatives or vendors.[15] It further states at paragraph 7 that Kutka would be in violation of the agreement if he took any prohibited action either directly as an individual, or indirectly as a member of a group.[16]

---

[12] ECF # 30 at 15 ¶¶ 46, 47.

[13] ECF # 52 at ¶ 30. From 2007 to 2011 when he assumed his final position at PolyOne described above, Kutka was employed at PolyOne as a Technology Launch Manager, a position which dealt with the commercialization of newly-developed products and streamlining the communication process between PolyOne's laboratory, marketing department, and sales department. ECF # 78 at ¶¶ 23, 24.

[14] ECF # 30-1 (2011 employment agreement), at ¶ 5.

[15] *Id.*, at ¶ 6.

[16] *Id.*, at ¶ 7.

As regards the prohibition against competing with PolyOne after the conclusion of employment, Kutka was prohibited in Attachment A of the employment agreement from engaging in any of the following activities:

(a) I am prohibited from being employed by or entering into or engaging in any business which competes with PolyOne's business within the Restricted Territory applicable to me as defined above;

(b) I am prohibited from soliciting customers, business, orders for, or selling any products or services in competition with, or for any business that competes with, the business of PolyOne;

(c) I am prohibited from diverting, enticing, or taking away any customers, business, orders or sales of PolyOne or attempting to do so; and/or

(d) I am prohibited from promoting or assisting, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in any business which competes with the business of PolyOne.[17]

Significantly, as noted, the agreement prohibits these activities only with what it terms "Restricted Territory."[18] Further, "Restricted Territory" is also defined, as noted above, by reference to the kind of position the employee held at PolyOne within the two years preceding his termination of employment. Specifically:

- If the employee was in "sales, sales management, or product marketing," the Restricted Territory was within a 50-mile radius of any PolyOne facility where the employee worked, including a home office, and any geographic area where he was assigned or had responsibility; plus all the specific customer accounts for which the employee was responsible.

---

[17] *Id.*, at 6.

[18] *Id.*, at 5.

- If the employee had technical responsibilities, the Restricted Area was "the area of PolyOne's business for which I had technical responsibility regardless of geographic location."

- If the employee had plant management, manufacturing management, sourcing, or production planning responsibilities, the Restricted Area "is the prohibited competitors (and their respective successors) listed on Attachment B that are within the business unit for which I had such responsibilities."

- If the employee was a participant in a long range incentive plan or the recipient of equity based awards, the Restricted Territory was also the listed prohibited competitors or their successors.[19]

PolyOne here seeks to enjoin Kutka from continuing employment at PolyMax because, it asserts, PolyMax is a competitor operating "in any geographical area over which Kutka was assigned or had responsibility while at PolyOne; *i.e.*, North America."[20]

The balance of PolyOne's prayer for relief consists of seeking to:

1. Enjoin Kutka from using or disclosing any of PolyOne's confidential or proprietary trade secrets, or information obtained in violation of the Computer Fraud and Abuse Act;

2. Compel Kutka to specifically perform all the covenants in the non-compete agreement; and

3. Order Kutka to "preserve and return to PolyOne any and all property of PolyOne."[21]

---

[19] *Id.*

[20] ECF # 30 at 37.

[21] *Id.*

For his part, Kutka states that he is:

1.  willing to return any PolyOne trade secrets in his possession, as he maintains he has already done;

2.  not to use or disclose any PolyOne trade secret information to anyone, which he again asserts does not apply because he has no such information;

3.  not to contact any PolyOne customers (or potential customers) until December, 2014; and,

4.  to remain in his present role as vice president of operations – and not assume a sales or product development role – until December, 2014.[22]

Accordingly, inasmuch as Kutka has essentially agreed to all the injunctive relief sought by PolyOne except for the demand that he be enjoined from continuing his employment at PolyMax, the only issue now before this Court is whether PolyOne is entitled to injunctive relief on that single claim.

## Analysis

**A.  Relevant law**

*1.  Preliminary injunction*

The grant of a preliminary injunction under Federal Rule of Civil Procedure 65 is an extraordinary remedy, and the moving party carries the burden of proving that the circumstances clearly demand it.[23] A district court uses equitable principles of federal law

---

[22] ECF # 77 at 2.

[23] *See*, *Penetone Corp. v. Palchem Inc.*, 627 F. Supp. 997, 1004 (N.D. Ohio 1985).

in determining whether to issue a preliminary injunction.[24] In doing so, the court considers four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.[25] The court considers these factors in aggregate, "balanced according to their relative strengths."[26] The strength of the likelihood of success on the merits is inversely proportional to the amount of irreparable harm that will be suffered if an injunction does not issue.[27] A particularly strong showing of likely success on the merits may allow for an injunction despite a weaker showing of irreparable harm, and vice versa.[28] Although the court must engage in this balancing test, a plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue.[29] When considering the first factor – likelihood of success on the merits – the court must anticipate the outcome of the underlying lawsuit. Hence, the court applies the

---

[24] *See*, *Southern Milk Sales v. Martin*, 924 F.2d 98, 102 (6th Cir.1991).

[25] *Leary v. Daeschner*, 228 F.3d 729 (6th Cir.2000); *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997).

[26] *Fed. Sav. & Loan Ins. Corp. v. Quinn*, 711 F. Supp. 366, 376 (N.D. Ohio 1989), vacated on other grounds, 922 F.2d 1251 (6th Cir.1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)).

[27] *Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).

[28] *Cabot Corp. v. King*, 790 F. Supp. 153, 155 (N.D. Ohio 1992).

[29] *Basicomputer Corp. v. Scott*, 791 F. Supp. 1280, 1285 (N.D. Ohio 1991), aff'd, 973 F.2d 507 (6th Cir.1992).

substantive law that will be used at trial. In an action for breach of a non-compete agreement, the contract's choice-of-law clause dictates the choice of law used at trial.[30]

At the preliminary injunction stage, a district court does not resolve "doubtful or difficult questions of law or disputed questions of fact."[31] The factual findings of a court deciding on a motion for preliminary injunction are not binding in the underlying lawsuit.[32]

*2.    Ohio non-compete agreements*

A non-compete agreement is considered reasonable, under Ohio law, if three conditions are met: (1) it goes no further than necessary to protect the legitimate interest of the employer; (2) it does not impose undue hardships on the employee; and (3) it is not injurious to the public.[33]

---

[30] *See*, *Tele–Save Merch. Co. v. Consumers Dist. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (holding that in diversity actions, federal district courts in Ohio adhere to contractual choice-of-law clauses "unless the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of [Ohio]") (citing *Jarvis v. Ashland Oil*, 17 Ohio St. 3d 189, 192, 478 N.E.2d 786, 789 (1985)).

[31] *Neveux v. Webcraft Techs.*, 921 F. Supp. 1568, 1572 (E.D .Mich. 1996) (citing *Int'l Molders' and Allied Workers' Local Union v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986)); *see also*, *Sargent v. Am. Greetings Corp.*, 588 F. Supp. 912, 925 (N.D. Ohio 1984) (denying a motion for preliminary injunction in part because genuine issues of material fact existed).

[32] *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

[33] *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 25-26, 325 N.E.2d 544, 547 (1975).

**B.     Application of relevant law**

PolyOne has not sought injunctive relief as to any counts in the complaint going to past conduct of Kutka or the other defendants. In that regard, I note what Judge Wells found in a similar situation in *Extracorporeal Alliance, L.L.C. v. Rosteck:*[34]

> The purpose of an injunction is to prevent future violations rather than to remedy past harms. [Thus, even if the plaintiff is likely to prevail on a claim of breach of loyalty, this] is a past violation. Since [the defendant] is no longer subject to this duty of loyalty, the plaintiff does not need to be protected against future violations although it may be entitled to damages if it can prove [the defendant's] past violations. [35]

I also observe, as was noted above, that Kutka has agreed to an injunction barring him from contacting any PolyOne customer or performing any sales role until December, 2014, and from using or disclosing any PolyOne trade secret or confidential information to anyone, as well as requiring him to return any PolyOne trade secrets in his possession.

---

[34] *Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F. Supp. 2d 1028 (N.D. Ohio 2003).

[35] *Id.* at 1045 (internal citations omitted). Such a result of no present injunctive relief with the possibility of obtaining damages for past wrongdoing would obtain here as to Count I, which alleges Kutka breached his non-compete agreement while employed at PolyOne; Count V, alleging a breach of the duty of loyalty; Count VI, alleging a civil conspiracy among the defendants to interfere with Kutka's employment agreement with PolyOne; Count VII, alleging Kutka fraudulently induced PolyOne to continue to employ him after he had already begun to work with the other defendants; Count VIII, asserting that between 2008 and 2011 all the defendants fraudulently represented Kutka as a "faithful employee" of PolyOne, or failed to disclose their relationship to PolyOne; Count IX, alleging that Kutka committed computer fraud and abuse in the immediate aftermath of his leaving PolyOne by improperly accessing and downloading PolyOne confidential information onto his personal external hard drives; Count X, contending that all the defendants conspired together to tortiously interfere with Kutka's employment relationship with PolyOne; and Count XII, asserting that Kutka has willfully destroyed evidence.

Accordingly, the scope of the injunction PolyOne actually seeks here is narrow and is essentially to bar Kutka from continuing any employment at PolyMax because that would be a breach of his non-compete agreement with PolyOne.

In that regard, Kuka raises two arguments: (1) that PolyMax is not a competitor of PolyOne, and (2) that Kutka's job at PolyMax is in operations and not in sales or product development and so does not breach the non-compete agreement.

As to whether PolyMax is a competitor, Kutka relies heavily on the evidence that his actual employer, PolyMax USA, is essentially a start-up, and so only "preparing to compete" against PolyOne in manufacturing and selling TPE products.[36] To that point, Kutka states that the evidence is that PolyMax USA has not made any products, sold any products, had any revenue, nor solicited any customers.[37] Moreover, he also contends that PolyMax USA is a "separate and distinct" company from PolyMax China, which has been in business since 2005 but which Kutka "has never worked for, been an employee of, or had any business relationship whatsoever with."[38]

PolyOne, for its part, asserts that the evidence is that Nantong PolyMax [also referred to as PolyMax China] is an admitted competitor of PolyOne, and that since PolyMax USA was formed, "its principals have solicited some of PolyOne's biggest customers and/or

---

[36] ECF # 77 at 3, 20.

[37] *Id.* at 3.

[38] *Id.* at 4.

otherwise targeted these businesses in the United States."[39] In doing so, PolyOne cites evidence that "PolyMax [USA] solicited these customers [both] for PolyMax [China] and for its own account, making little distinction between the companies."[40] Moreover, PolyOne notes that Kutka, in his answer the original complaint, admitted that "he has commenced employment with PolyMax and that PolyMax is a competitor of PolyOne."[41]

Based on the evidence of record, I recommend finding that PolyOne is likely to prevail on the issue of showing that PolyMax USA is substantially the same entity as PolyMax China, and that PolyMax China is, and has been since 2013, a recognized competitor of PolyOne.

That said, however, Kutka's argument that his job at PolyMax USA is an operations position and not in sales or in product development raises the issue of whether a non-compete restriction that barred an employee from any job at a competitor is too broad to be enforced under Ohio law.

To that point, in construing Ohio law as to non-compete agreements in the context of injunctive relief, the Seventh Circuit recently emphasized that the applicable rule is that "while [Ohio law] allows employers to implement protections against enterprising former employees, it only allows these protections up to the point that they do 'not impose undue

---

[39] *Id.* at ¶ 36; conclusions of law at ¶ 14.

[40] *Id.*

[41] *Id.* at ¶ 35.

-11-

hardship on the employee[s].'"[42] As Judge Carr observed in *MP TotalCare Services, Inc. v. Mattimoe*, Ohio law imposes the burden on the employer to prove the restraint reasonable[43] and further affords courts the power to modify a restraint that is not reasonably necessary to protect the employer's legitimate business interests and then enforce the covenant as modified.[44] Moreover, it is the employer that has the burden of proving the restriction is reasonable.[45]

It must also be noted, however, as Chief Judge Oliver concluded in *Office Depot v. Impact Office Products, LLC*, that Ohio courts teach that "[a] determination that a covenant is unduly harsh requires a much greater standard than determining whether the covenant is merely unfair."[46] In addition, the Sixth Circuit has recently cautioned against courts stating too broadly any conclusion in any specific case of a non-compete clause, since such cases are in essence "fact-bound" and such holdings "cannot be extended much further than the facts."[47]

---

[42] *Tradesman Int'l v. Black*, 724 F.3d 1004, 1013 (7th Cir. 2013) (quoting *Raimonde*, 42 Ohio St. 2d at 25-26, 325 N.E.2d at 547.

[43] *MP TotalCare Servs. v. Mattimoe*, 648 F. Supp. 2d 956, 963 (N.D. Ohio 2009) (citations omitted).

[44] *Id.* (citations omitted).

[45] *Id.* (citations omitted).

[46] *Office Depot v. Impact Office Prods., LLC*, No. 1:09 CV 2791, 2011 WL 4833117, at *14 (N.D. Ohio Oct. 12, 2011) (citations omitted).

[47] *FirstEnergy Solutions Corp. v. Flerick*, 521 F. App'x 521, 528 (6th Cir. 2013) (internal citations omitted).

To that end, Judge Carr noted in *MP TotalCare Services* that, in assessing the reasonableness of contractual restrictions, courts in Ohio consider:

> [W]hether the covenant imposes temporal and spatial limitations, whether the employee had contact with customers, whether the employee possesses confidential information or trade secrets, whether the covenant bars only unfair competition, whether the covenant stifles the employee's inherent skill and expertise, whether the benefit to the employer is disproportionate to the employee's detriment, whether the covenant destroys the employee's sole means of support, whether the employee's talent was developed during the employment, and whether the forbidden employment is merely incidental to the main employment.[48]

Accordingly, while PolyOne has produced authority to show that Ohio regards one-year restrictions as reasonable, it has not produced authority showing that a total ban on any employment in any capacity with a competitor in any location in the country is reasonable, or that additional restrictions such as those agreed to by Kutka would not adequately protect the employer's legitimate business interest while not destroying the employee's sole means of support. Indeed, the total ban on any employment in any position with any competitor is not a ban on unfair competition, but a total ban on competition itself, producing a disproportionate benefit to the employer to the employee's detriment.[49]

Judge Helmick's recent reasoning in *Avery Dennison Corporation v. Juhasz* is helpful.[50] Like here, the company in *Avery Dennison* brought a diversity action against a former employee and sought a preliminary injunction. Also like here, the defendant argued

---

[48] *MP TotalCare Servs.*, 648 F. Supp.2d at 963 (internal quotation, citation omitted).

[49] *See, id.*

[50] *Avery Dennison Corp. v. Juhasz*, 924 F. Supp. 2d 893 (N.D. Ohio 2013).

that he was hired to perform an entirely different job than he did for Avery Dennison and so was not directly competing with his former employer.[51] The company responded, again as does PolyOne, that the new position was "a sham and a smoke screen" that the defendant had no background to do and that his history with Avery Dennison would inevitably put him in competition.[52]

While acknowledging, as *FirstEnergy Solutions Corp.* requires, that there are significant factual differences between *Avery Dennison* and this case, most notably in the exact wording of the terms of the agreement at issue, I note that Judge Helmick was clear that he was unpersuaded by the argument that a position is necessarily a sham simply because the person does not have "every skill or qualification requirement in the job description...."[53] Moreover, while he found the company's "suspicion and mistrust" of the former employee's new employer "perhaps understandable," he ultimately found that such suspicion was not sufficient to overcome the testimony of the defendant, as here, that he clearly understood his obligations under the applicable agreements and agreed to abide by them.[54]

Thus, while acknowledging that the company felt it could not trust the defendant not to utilize company information in his new job, Judge Helmick found this suspicion "not

---

[51] *Id.* at 899-900.

[52] *Id.* at 900-901.

[53] *Id.* at 901.

[54] *Id.*

sufficient, however, to establish a likelihood of success on the merits."[55] Where the company had produced no evidence to support a claim of actual or threatened misappropriation, or that the defendant had used or disclosed information, it would not be entitled to a preliminary injunction.[56]

Here, there is no "clear and convincing" evidence from PolyOne that Kutka's position as vice president of operations of PolyMax USA is a "sham and a smokescreen." At best, it remains an open question of fact as to what that position entails, and so, is not something this Court must resolve at this stage. More important, if Kutka can establish that this is a legitimate position and is enjoined from contact with PolyOne's customers or involvement in product development, the question presented is whether a covenant barring him for doing that job, or indeed any job at PolyMax USA, is necessary to protect PolyOne's legitimate business interest in protecting its trade secrets and confidential information.

Indeed, the rule in Ohio on inevitable disclosure as a ground for injunctive relief was stated in *Proctor & Gamble Co. v. Stoneham*, as whether the employee with detailed knowledge of trade secrets "has begun employment with a competitor of the former employer in a position that is *substantially similar* to the position held during the former employment."[57] As discussed above, PolyOne has not shown by clear and convincing

---

[55] *Id.*

[56] *Id.*

[57] *Proctor & Gamble Co. v. Stoneham,* 140 Ohio App.3d 260, 274, 747 N.E.2d 268, 279 (2000) (citation omitted).

evidence that Kutka's present position at PolyMax is any way "substantially similar" to his final position at PolyOne, nor has it shown that Kutka's PolyMax job is a sham, and so has not shown that it is inevitable that Kuka will breach his employment agreement unless he is forced to relinquish his current job.[58]

Thus, I recommend finding that PolyOne has not met its burden of showing that a restriction precluding Kutka from any kind of employment with any kind of competitor at any location in the country is reasonable,[59] and so has not shown a likelihood of success on that claim.

In addition, as to the element of showing irreparable injury without an injunction, I note first that PolyOne has stated that it would be able to calculate a "reasonable royalty" for

---

[58] *See*, *Avery Dennison*, 924 F. Supp.2d at 900-01. PolyOne's attempt to show substantial similarity focuses on Kutka's job as Technology Launch Manager. ECF # 78 at 63. That position, however, is one that Kutka left fully two years before his employment at PolyOne ended. PolyOne makes no effort so show that Kutka's actual job during his final two years at PolyOne – the time period on which the non-compete agreement bases its restrictions – was in any way substantially similar to either his current job at PolyMax USA or indeed to any job at PolyMax USA.

[59] Indeed, the most broadly worded restriction in the agreement here, which obtains in cases where the employee had "technical responsibilities" for the design, development, formulation, technical services, or engineering for an "area" of PolyOne's business such as colors, adhesives or TPEs, tailors the one-year restriction to "the area of PolyOne's business for which I had technical responsibility" during the two years prior to leaving PolyOne. ECF # 30-1 at 5. Here, Kutka spent the two years prior to leaving PolyOne not involved with TPEs, but in another area of PolyOne's business. While, of course, PolyOne argues that all its businesses are related, it cannot escape the plain meaning of this covenant which does distinguish between different areas of business and does not prohibit a former employee from taking a job with a competitor in a different area of business. Even the portion of the agreement that concerns participants in long term incentive plans, only restricts employment at certain, named "Prohibited Competitors," of which PolyMax is not one.

any PolyOne formula that can be shown to have been used by Kutka.[60] But, as Chief Judge Oliver has noted in *Office Depot*, however, the fact that some damages are capable of proof does not foreclose the possibility that other damages are not, particularly in the areas of loss of goodwill and an ongoing economic consequences from the loss of a regular customer.[61] That said, however, PolyOne's arguments for irreparable injury focus on theories of inevitable disclosure, which have been discussed above. In particular, as to the claim of misappropriation of trade secrets, simply being exposed to the possibility of misappropriation is not enough, the threat must be shown to be actual or threatened.[62]

Thus, recognizing that if the likelihood of success on the merits is weak then the arguments for irreparable harm must be especially strong in order to obtain injunctive relief,[63] I recommend finding that PolyOne has not established a strong case with clear and convincing evidence that it will be irreparably damaged without an injunction.

## Conclusion

Accordingly, for the reasons stated, I recommend granting a preliminary injunction to PolyOne only as to the elements agreed to by Kutka and set forth above, and denying any further relief on the basis of the non-compete agreement, which should be modified as stated

---

[60] ECF # 86 at 30.

[61] *Office Depot*, 2011 WL 4833117, at *14.

[62] *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1005 (S.D. Ohio 2008).

[63] *See*, *Office Depot*, 2011 WL 4833117, at *14 (citing *Cabot v. King*, 790 F. Supp. 153, 155 (N.D. Ohio 1992).

above. Of course, nothing in this injunction should preclude PolyOne from proving at trial any past or future violation of the agreement as modified.

Dated: October 31, 2014                    s/ William H. Baughman, Jr.
                                           United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[64]

---

[64] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).